Stewart, J.
The defendant asserts that the questions of law presented are:
(1) Does the rule of res ipsa loquitur apply where *465 the instrumentality causing the injury was not in the possession, management or control of the defendant at the time of the injury?
(2) Should the rule of res ipsa loquitur be applied where the force causing the explosion was applied by the plaintiff?
(3) Does the rule of res ipsa loquitur apply where the accident itself is as suggestive of some other cause as it is of the negligence of the defendant?
On the other hand, plaintiff asserts that there is only one question of law presented, namely, is the doctrine of res ipsa loquitur applicable despite the fact that the instrumentality left the defendant’s possession, where the plaintiff negatived the possibility of the defect having arisen in the instrumentality after it left defendant’s hands? Or, stating it another way, where the circumstantial evidence pointing to defendant’s negligence is sufficiently persuasive and was not rebutted or explained by defendant, should the case have gone to the jury, although plaintiff did not produce direct evidence of specific negligence?
Plaintiff is relying solely on the rule of res ipsa loquitur which, in this state, is not a rule of liability or of substantive law but is a rule of evidence which permits the jury, but not the court, in a jury trial to draw an inference of negligence, where the instrumentality causing the injury was under the exclusive possession, management and control of the defendant, and the accident occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed. Fink v. New York Central Rd. Co., 144 Ohio St., 1, 56 N. E. (2d), 456.
A whole series of Ohio cases have announced in b’oth their syllabi and opinions the doctrine that the res ipsa loquitur rule is applicable only where the instrumentality causing the accident and injury was under *466 the exclusive control and management of the one charged with responsibility for the accident. Cincinnati Traction Co. v. Holzenkamp, 74 Ohio St., 379, 78 N. E., 529, 113 Am. St. Rep., 980; Glowacki, a Minor, v. North Western Ohio Ry. & Power Co., 116 Ohio St., 451, 157 N. E., 21, 53 A. L. R., 1486; Hiell v. Golco Oil Co., 137 Ohio St., 180, 28 N. E. (2d), 561; Worland v. Bothstein, 141 Ohio St., 501, 49 N. E. (2d), 165; Fink v. New York Central Bd. Co., supra; Loomis v. Toledo Railways & Light Co., 107 Ohio St., 161, 140 N. E., 639; St. Marys Gas Co. v. Brodbeck, Admr., 114 Ohio St., 423, 151 N. E., 323; Sherlock v. Strouss-Hirshberg Co., 132 Ohio St., 35, 4 N. E. (2d), 912; Renneckar v. Canton Terminal Restaurant, Inc., 148 Ohio St., 119, 73 N. E. (2d), 498; Soltz v. Colony Recreation Center, 151 Ohio St., 503, 87 N. E. (2d), 167; and Feinberg v. Hotel Olmsted Co., 152 Ohio St., 417, 89 N. E. (2d), 569.
In the Hiell case, supra, Chief Justice Weygandt quoted with approval the following summary of the rule as stated in 9 Wigmore on Evidence (3 Ed.), 380, Section 2509:
“(1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user; (2) Both inspection and user must have been at the time of the injury in the control of the party charged; (3) The injurious occurrence or conditions must have happened irrespective of any voluntary action at the time by the party injured.”
In the Renneckar case, supra, Judge Zimmerman, in his opinion, stated:
“By several of its later decisions this court is now committed to the proposition that res ipsa loquitur is a rule of evidence which permits, but does not require, the jury to draw an inference of negligence in a case where the instrumentality causing injury is shown to have been within the exclusive management and con *467 trol of the defendant and where the circumstances attending the injury were of such a character in themselves as to warrant the conclusion that a lack of ordinary care on the part of the defendant was responsible for the occurrence or condition causing the injury.”
If this court were to literally follow its many pronouncements in syllabi and opinions, we would perforce have to say that the Court of Appeals was in error in reversing the judgment of the Common Pleas Court, for plaintiff neither pleaded nor offered any evidence of negligence on the part of defendant but relied solely on the rule of res ipsa loquitur, and it is undisputed that at the time of the accident causing plaintiff’s injuries the bomb had been out of defendant’s possession and in the possession, for at least two months, of the jobber, Arrowhead, and for five days in the exclusive possession and control of plaintiff himself. Further, plaintiff fired the bomb from the surface of the ground although, in his five years of fireworks experience, out of approximately 200 times he had fired such bombs he had buried the mortars containing the bombs in the ground approximately 160 times.
However, plaintiff strenuously argues that in the many cases on the subject decided by this court the statements to the effect that, in order for the res ipsa loquitur rule to be applicable against a defendant, it is necessary that the instrumentality causing the injury was within the exclusive control and management of such defendant are merely obiter dicta. Plaintiff asserts that the Ohio decisions fall into two groups: first, those in which the court held the rule applicable, and, second, those in which the court held the rule inapplicable. In the first group are the Holzen-Itamp, Glowacki, Hiell, Worland and Fink cases. Plaintiff argues that, since in each of those cases the court permitted the plaintiff to invoke the res ipsa *468 loquitur rule and the instrumentality causing injury was within the exclusive control and management of the defendant, the statement that in order for the rule to be applicable there must be such exclusive control and management was wholly unnecessary and is merely obiter dictum. In the second category are the Loomis, St. Marys Gas Co., Sherlock, Rennechar, Solts and Feinberg cases. Plaintiff contends that an analysis of each of those cases discloses that the test was whether the evidence showed that the accident was equally as referable to other causes as to defendant’s negligence, and that in the application of this test the question of who was in control of the instrumentality was simply one factor.
Plaintiff contends further that the mere fact that he had the control, custody and management of the bomb at the time he fired it went only to the question of whether he was guilty of contributory negligence and had nothing to do with the question of defendant’s negligence in furnishing a defective bomb.
Plaintiff contends further, and this is the cornerstone of his argument, that in recent actions in other courts against manufacturers, where the res ipsa loquitur rule was applied and where the injuries resulted from exploding bottles of carbonated beverages in the possession of retailers, the strict necessity of exclusive possession, control and management has been modified, and that, where it is shown that the instrumentality was in the same condition as it was when it left the manufacturer’s possession, it was still constructively in the manufacturer’s custody and control at the time of the accident.
Plaintiff contends further that by his evidence he has shown that it was not reasonably possible for there to have been any change in the bomb herein involved from the time it left defendant’s possession until the explosion.
In answer to this contention it must be remembered *469 that in each of the bottle cases the explosion occurred without any action on the part of the one injured and so soon after the delivery of the bottle to the retailer that it was easy to demonstrate that it was in the same condition as it was when it left the manufacturer’s or bottler’s possession.
Defendant contends that in the present case the explosion was initiated by the act of the plaintiff and at a place and time selected by him, and that plaintiff had exclusive control and possession of the bomb, which facts differed from those in the cases of persons injured by exploding bottles.
In connection with such cases, it may be noted that the courts were far from unanimous in allowing the application of the res ipsa loquitur rule, and those which permitted it required that it be shown that the articles could have in no way been subjected to improper handling by others between the time they left the manifacturers or bottlers and the time of the explosions.
The cases recognizing liability as to impure foods and drugs are based upon warranties in pure food and drug acts, and in this case no warranty has been pleaded, proved or relied on.
Plaintiff relies on defendant’s catalog for 1950, furnished by Arrowhead, which contained on the cover the trademark and seal of defendant.
In order to show that defendant was a manufacturer, the plaintiff cross-examined its president and manager, who testified that the aerial salute bombs were shipped to it by the manufacturer and thereafter sold and delivered to Arrowhead in the same boxes, on which labels had been affixed bearing a trademark of the defendant. This is the only evidence in the record showing that the defendant in any way altered the original shipping cartons. The record shows that plaintiff never saw such boxes with such labels or knew that they existed. However, in our opinion, un *470 der the state of the record it is unimportant to discuss the question whether defendant is considered the manufacturer of the bomb involved in the present case.
Plaintiff concedes that in order to extend the res ipsa loquitur rule so as to render it applicable against one not in the possession, control or management of an instrumentality causing injury, all those having subsequent possession, control or management of such instrumentality must have exonerated themselves from responsibility, that is to say, it must be shown that the instrumentality was not reasonably subject to access and mishandling by others.
So far as plaintiff is concerned, he gave himself a clean bill of health. He testified that he received the bombs, among which was the one in question, from bins constructed with shelves which tilted backward toward the wall and in which the bombs were loosely placed. He transported them in his automobile over 40 miles of concrete highway, without jolting, the fording of any rivers and any unusual incident. He stored them for five days in a room to which he had the only key and which was dry, had a roof, did not leak and was inaccessible to anyone except plaintiff.
However, as to Arrowhead there is no such exoneration.
It is undisputed that Arrowhead had possession, custody and control of the bombs, including the one herein involved, for at least two months, and possibly four months.
The only testimony with reference to the handling of the bombs while they were in the possession of Arrowhead is that they were received sometime between the last week of February and the middle of April; that from their external appearance nothing out of the ordinary was observed; that they were placed loose in a shelf bin in the St. Louis Park warehouse of Arrowhead; and that on May 27, 1950, the loose bombs were *471 sold to plaintiff, taken out of the bin and repacked for delivery to Mm, at wMch time they appeared to be all right as far as could be seen.
There is no evidence as to the nature of the warehouse, whether it was damp or dry, who, if any, worked in it who might have had access to the bin containing the loose bombs, and who, if any, reasonably could have handled or mishandled such bombs. In fact, there is no evidence concerning the bombs during at least two months while they were in Arrowhead’s warehouse.
There was testimony that the bomb involved in the present case could have been so damaged as to cause a defect which would have caused it to fire prematurely, by dropping it, by mishandling of the shells at the time of loading, by the hanging on to a fuse, by some one stepping upon it, by something falling upon it or by its getting wet from rain or dampness.
Assuming plaintiff to be right in his contention that the rule of res ipsa loquitur should be applicable against a defendant even though the instrumentality causing injury had left his control, custody and management, where it can be shown that nothing happened to it from the time it left defendant’s possession until the time of the accident and injury, it follows that the rule was not applicable in the present case since there is an entire absence of evidence that during at least two months ’ custody of the bomb by Arrowhead one or more of the various causes of damage to such bomb resulting in its defectiveness could not reasonably have happened.
We conclude, therefore, that ordinarily there must be custody, control and management of an injury-causing instrumentality by a party in order to render applicable against him the rule of res ipsa loquitur, and that before the rule may be applicable against a party out of such custody, control and management, there must be a complete showing that the instrumen *472 tality could not have been mishandled or tampered with between the time of its leaving the custody of the one sought to be charged and the time of the accident causing the injury.
For the reasons stated, we hold that the Court of Appeals was in error in reversing the judgment of the Court of Common Pleas. Accordingly, the judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.

Judgment reversed.

Weygandt, C. J., Middleton, Taet and Halt, JJ., concur.
Zimmeeman, J., dissents.
Lamneck, J., not participating.